957 F.2d 1108
 73 Ed. Law Rep. 404
 Drew BRODY, Jennifer Hohnstine, By and Through their next
friend, Joanne SUGZDINIS, on behalf of themselves
and other students similarly situated
v.
Edward SPANG, individually and in his official capacity as
Principal, Downingtown Area Senior High School, Ronald Gray,
individually and in his official capacity as Superintendent,
Robert Eldredge, individually and in his capacity as
President, Downingtown Area School Board, Cynthia Hallman,
Nancy Glenn, Olen Simmons, James Watson, Benjamin Lagarde,
Andrew Harden, Frank Marcocci, Shirley Hamhons, individually
and in their official capacities as members of Downingtown
Area School Board, Bonnie Fitzgerald, by and through her
guardian, Millard C. Fitzgerald, Millard C. Fitzgerald as an
individual, Charles Guth, by and through his guardian John
Guth as an individual, Lauri Kyler, by and through her
guardian, Laura Kyler, Laura Kyler as an individual, Timothy
Cura, by and through his guardian Joseph Cura, Joseph Cura
as an individual, Amber Fernald, by and through her
guardian, Patricia Fernald, Patricia Fernald as an
individual, on behalf of themselves and other students and
taxpayers similarly situated, Proposed Intervenors, Appellants.
 No. 91-1209.
 United States Court of Appeals,
Third Circuit.
 Argued July 31, 1991.
Decided Feb. 28, 1992.
As Amended March 18, 1992.
 
 Stefan Presser (argued), American Civil Liberties Union, Philadelphia, Pa., for Brody and Hohnstine.
 James E. McErlane (argued), Lamb, Windle & McErlane, West Chester, Pa., for Spang, Gray, Eldredge, Hallman, Glenn, Simmons, Watson, Lagarde, Harden, Marcocci and Hamhons, Thomas C. Crumplar, Jacobs & Crumplar, Thomas S. Neuberger (argued), Wilmington, Del., Cooperating Attorneys for The Rutherford Institutes of Delaware and Pennsylvania, for appellants.
 Before BECKER, SCIRICA and ROTH, Circuit Judges.
 OPINION OF THE COURT
 ROTH, Circuit Judge.
 
 
 1
 This suit derives from a dispute over whether and to what extent religious speech may be included in a public high school graduation ceremony, and requires us to evaluate the competing interests of students under the free speech and establishment clauses of the First Amendment. The underlying action was filed by two members of the Class of 1990 at the Downingtown Area Senior High School by and through a next friend. Among other allegations, the complaint asserted that the inclusion of prayer at commencement exercises violated the establishment clause.
 
 
 2
 The question raised on the present appeal is whether the district court erred in denying the motion of another group of students and their parents either to intervene as of right or in the alternative for permissive intervention. This second group asserts that students possess a free speech right to discuss religion in graduation speeches. The validity and sufficiency of this claimed legal interest under the test for intervention as of right, depends on whether the graduation ceremony qualifies as a First Amendment public forum. Because we find that the factual record as to the nature and history of commencement exercises at Downingtown Senior High School is inadequate, we are unable to decide this question. We will consequently remand this case to the district court for further development of the factual record and for a determination of the public forum issue.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 The plaintiffs in the underlying suit are Drew Brody and Jennifer Hohnstine (the "Brody group"), two students in the Class of 1990 at Downingtown Area Senior High School. The defendants are the president and members of the school board, and the principal and superintendent of the school (the "school officials"). The central claim of the plaintiffs' complaint alleged that the school officials' sponsorship of an official baccalaureate service, inclusion of religious benedictions and invocations at graduation ceremonies, and requirements that students write essays on religious subjects in English class, all violated students' rights under the establishment clause. The Brody group also challenged the school's denial of permission for the formation of a student group to discuss the constitutionality of the baccalaureate and graduation ceremonies, on free speech grounds and under the Equal Access Act, 20 U.S.C. §§ 4071-74 (1988).
 
 
 4
 The plaintiffs filed their suit on June 7, 1990, one day before the June 8, 1990 graduation ceremony, and several days after a school-sponsored baccalaureate service had been held on June 3, 1990. With the agreement of the defendant school officials, the district court entered a temporary restraining order that same day, prohibiting "any prayer or proselytization in [the] benediction or invocation" at the commencement. Joint App. at A-17. On the day of graduation, three other members of the Class of 1990 filed a motion to intervene.
 
 
 5
 Two weeks later, seven additional individuals joined in the intervention motion, and the group filed a brief in support of their position. These applicants for intervention (the "Fitzgerald group") fall into three categories: (1) Bonnie Fitzgerald, Charles Guth, and Lauri Kyler, the original applicants, who are members of the Class of 1990; (2) Timothy Cura and Amber Fernald, who are members of the Class of 1991; and (3) Millard Fitzgerald, John Guth, Laura Kyler, Joseph Cura, and Patricia Fernald, who are parents of these students and taxpayers in the school district. The Fitzgerald group's motion before the district court asserted that the TRO and the final relief sought by the Brody group infringed the Fitzgerald students' rights of free speech and freedom of association. The plaintiffs filed an opposition to the intervention motion, but the defendant school officials took no position on the issue.
 
 
 6
 Several days after the June 8th graduation, the Brody group also filed a motion for contempt, alleging that the president of the school board had offered a prayer during the commencement and that consequently defendants had breached the TRO. After negotiations by the parties on both the matters raised in the complaint and those asserted in the motion for contempt, the parties agreed to a consent decree, which the district court approved on September 24, 1990. As of that date, the district court had not yet ruled on the motion to intervene, and the members of the Fitzgerald group were not involved in the settlement negotiations.[1]
 
 
 7
 The consent decree entered by the district court prohibits conducting baccalaureate services or including prayer or religious ceremonies in any graduation ceremony or other official event at Downingtown Senior High School. The provision pertaining to commencement exercises and other official events applies not only to the defendant school officials, but also to "those acting by their invitation," and states that "[e]xcept with respect to students invited to speak at graduation, nothing in this agreement shall be interpreted to restrict any student's first amendment rights." Joint App. at A-61. Not surprisingly, this term provides the focus for the Fitzgerald group's free speech claims. The order also provides for compliance with the Equal Access Act, 20 U.S.C. §§ 4071-74 (1988), and establishes a procedure for amendment of the decree upon any change in the state of the law.[2]
 
 
 8
 Following the adoption of the consent decree, the applicants for intervention filed an appeal of the district court's order. This Court, however, dismissed the appeal for lack of appellate jurisdiction in Brody v. Spang, No. 90-1804 (3d Cir. Jan. 11, 1991). See Pennsylvania v. Rizzo, 530 F.2d 501, 508 (3d Cir.) (appellant must have been granted permission to intervene in order to appeal merits of case), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). On February 22, 1991, the district court formally ruled on and denied the motion to intervene. Brody v. Spang, 1991 WL 24954 (E.D.Pa.1991). The district court found that none of the applicants for intervention possessed a sufficient legal interest in the dispute, and that to the extent any such interest existed, it was adequately represented by the defendant school officials. The Fitzgerald group now appeals from this denial of their motion to intervene.
 
 II. MOOTNESS
 
 9
 As a preliminary matter, we must assess whether this case has become moot on appeal. Although the district court decided the motion to intervene several months before the 1991 graduation ceremony, by the time that we heard oral argument on this appeal, all the student members of the Fitzgerald group had already graduated from Downingtown Senior High School. We are therefore required to consider whether the graduation of the applicants for intervention who are members of the Class of 1991 renders this appeal moot.
 
 
 10
 This Court is limited by Article III of the Constitution to adjudicating only live cases or controversies, and we are consequently unable to decide questions that have become moot. De Funis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam). The mootness bar does not apply, however, if the dispute presented is "capable of repetition, yet evading review." Under this doctrine, two elements must be met: "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). See also Roe v. Wade, 410 U.S. 113, 124-25, 93 S.Ct. 705, 712-13, 35 L.Ed.2d 147 (1973) ("Pregnancy often comes more than once to the same woman, and ... provides a classic justification for a conclusion of nonmootness.").
 
 
 11
 In the present case, the length of the school year during which a student is a graduating high school senior is clearly too short to complete litigation and appellate review of a case of this complexity. See Board of Educ. v. Rowley, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041 n. 9, 73 L.Ed.2d 690 (1982) (student's claim under Education of the Handicapped Act for preceding school year not moot because claim may arise in subsequent years and "[j]udicial review invariably takes more than nine months to complete"); cf. Roe, 410 U.S. at 125, 93 S.Ct. at 713 ("the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete"). As a result, this controversy is one which "evades review." The applicants for intervention have greater difficulty, however, with the second prong of the test. These same students will never again graduate from Downingtown Senior High School, and thus, this dispute is not capable of repetition as to them.
 
 
 12
 We reject the argument that the Fitzgerald group can escape this difficulty simply because they contemplated seeking class certification, and noted in their motion to intervene that they would "subsequently file a motion pursuant to Rule 23 of the Federal Rules of Civil Procedure for class certification." Joint App. at A-19. Although class certification can substitute for the capable of repetition requirement if the controversy still exists as to the present members of the class, a class must have been properly certified in order to qualify under this exception. See Board of School Comm'rs v. Jacobs, 420 U.S. 128, 129-30, 95 S.Ct. 848, 849-50, 43 L.Ed.2d 74 (1975). In fact in Jacobs, the plaintiffs had not only filed a class certification motion, but the district court had granted it, and yet the Supreme Court still held that the plaintiffs had failed to meet the class action exception because the order did not adequately define the class to be represented. In the present case, however, the applicants for intervention never even moved for class certification.
 
 
 13
 Yet, also among the Fitzgerald group are five parents, who assert their claims on the basis of their children's interests.[3] Their inclusion is significant because these parents independently have standing to bring constitutional challenges to the conditions in their children's schools, see School Dist. of Abington Township v. Schempp, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963), and at least two of the five parents have younger children in the Downingtown School District: John Guth's daughter Susan is in the seventh grade and Patricia Fernald's son Charles is in the eleventh grade.[4] Since the consent decree is designed to remain in effect indefinitely, it is likely that these parents will confront the same barriers to religious speech when their younger children graduate from high school. See Honig v. Doe, 484 U.S. 305, 320-22, 108 S.Ct. 592, 602-03, 98 L.Ed.2d 686 (1988). Consequently, as to these two individuals, the present dispute is capable of repetition.
 
 
 14
 In fact, the Fifth Circuit confronted an almost identical mootness question in Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152 (5th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981), which involved a free exercise of religion challenge to a high school's transfer policy for ninth graders. During the pendency of the Walsh case, all of the originally named students completed the ninth grade, and were therefore no longer subject to the challenged rule. The plaintiffs informed the district court, however, that several of the plaintiff parents had other children in the school system who would ultimately reach the high school. See Walsh v. Louisiana High School Athletic Ass'n, 428 F.Supp. 1261, 1263 (E.D.La.1977). The Fifth Circuit affirmed the district court's holding that the case had consequently not become moot, because "the district court reasonably could expect that the same complaining parties again would be subjected to the challenged action in the future." 616 F.2d at 157.
 
 
 15
 In addition, our own Court has stated in an in banc opinion that the capable of repetition prong of this exception should be applied liberally in cases involving significant individual interests. See United States v. Frumento, 552 F.2d 534, 540-41 (3d Cir.1977) (in banc ). In Frumento, this Court held that the appeal of a contempt order requiring imprisonment was not moot despite the fact that the appellant had already been released. After conducting an analysis demonstrating why the particular individual might again be subject to confinement, we stated:
 
 
 16
 Even if we could not construct or project any "capability of repetition" in this case, we would nevertheless decline to dismiss [this] appeal as moot.
 
 
 17
 While in each of the instances discussed, the Supreme Court has determined that "capability of repetition" existed, we are of the view that such capability was perceived so as to satisfy the true governing consideration behind the Court's decision--that of having review available when significant interests are at stake.
 
 
 18
 Id. at 540.
 
 
 19
 Thus, at least as to the parents John Guth and Patricia Fernald, this dispute is capable of repetition yet evading review. As a result, we hold that this controversy is not moot, and we will proceed to consider the merits of this appeal.[5]
 
 III. STANDARDS FOR INTERVENTION
 
 20
 We review a denial of a motion to intervene as of right for abuse of discretion, although this review is "more stringent" than the abuse of discretion review we apply to a denial of a motion for permissive intervention. Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir.), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). Under the Harris standard, a denial of intervention as of right should be reversed if the district court " 'applied an improper legal standard or reached a decision that we are confident is incorrect.' " Id. (quoting United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 992 (2d Cir.1984)). We are more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention.
 
 
 21
 The Fitzgerald group seeks intervention as of right as a party defendant under Fed.R.Civ.P. 24(a)(2), which covers any proposed intervenor who by timely application, "claims an interest relating to the property or transaction which is the subject matter of the action and ... is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," and whose interest is not "adequately represented by existing parties." As construed by this Court, this rule entitles an applicant to intervene if:
 
 
 22
 (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.
 
 
 23
 Harris, 820 F.2d at 596.
 
 
 24
 In the present case, there is no question that the Fitzgerald group's motion to intervene was timely, since the original motion was filed only one day after the complaint, and the amended version was filed only two weeks later. Of the remaining three elements of the test, the focus of the dispute is on the sufficient legal interest factor. Although appellants' ability to satisfy the impairment of interest and the adequacy of representation factors is also at issue, our analysis below demonstrates that if appellants can show that they possess a legally cognizable interest in this dispute, then they can also meet these two further elements of the Rule 24(a) test.
 
 
 25
 Should intervention as of right not be available, the Fitzgerald group alternatively seeks permissive intervention pursuant to Fed.R.Civ.P. 24(b). Permissive intervention is available upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." The rule further provides that in exercising its discretion as to whether to grant permissive intervention, the district court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
 
 IV. INTERVENTION AS OF RIGHT
 A. Sufficiency of Asserted Legal Interest
 
 26
 To meet this prong of the test for intervention as of right, the legal interest asserted must be a cognizable legal interest, and not simply an interest " 'of a general and indefinite character.' " Harris, 820 F.2d at 601 (quoting United States v. American Telephone & Telegraph Co., 642 F.2d 1285, 1292 (D.C.Cir.1980)). In assessing whether a proposed intervenor has stated a legally cognizable claim, it is appropriate in certain cases to conduct a two step examination, separately evaluating whether the applicant has a right to intervene at the merits stage and whether he or she may intervene to participate in devising the remedy. Id. at 599.
 
 
 27
 We established the bifurcated inquiry approach in Harris, which involved a motion by the Philadelphia District Attorney to intervene as a defendant in a suit alleging that the conditions in city prisons were unconstitutional. As we pointed out in that case, particularly in institutional reform litigation, "while only some individuals may be held liable for the unlawful conduct, and thus have an interest in the determination of liability, a larger number of persons' interests may be infringed on at the remedial stage of the litigation." Id. Moreover, we further expressed a belief "that, given the complexity of much public law litigation, permitting courts to limit intervention as of right to discrete phases of the litigation may be necessary in some cases." Id. at 599 n. 11.
 
 
 28
 We are presently faced with one of these cases. Although this action does not involve "institutional litigation" per se, this lawsuit is analogous to Harris. The plaintiffs' underlying claims ask the straightforward, if nonetheless complex, question of whether or not the defendants' policies violate the constitution, whereas the proposed remedy affects all the people involved in an entire institution. Moreover, as in Harris, the existing parties chose to enter a consent decree, and we are now concerned with the breadth of injunctive relief that is appropriate at the remedial stage.
 
 
 29
 The specific legal interest that the Fitzgerald group asserts on this appeal is a First Amendment free speech right of students to discuss religion in commencement speeches. Appellants do not seek to contest the provision of the consent decree which prohibits the school from sponsoring baccalaureate services. (Tr. at 23-24). In addition, they have not here presented the freedom of association claim raised in their motion before the district court. Nor does the Fitzgerald group assert a claim under the First Amendment's free exercise clause, having made only a few oblique references to that clause in their brief before us, and never having stated such a claim in their intervention motion before the district court.
 
 
 30
 Under our bifurcated inquiry, we must separately measure the legal sufficiency of the Fitzgerald group's free speech interests at each stage of the litigation. The merits phase of this action concerned the permissibility of baccalaureate services, invocations at graduation exercises, and certain English class assignments under the establishment clause. It also involved a challenge under the free speech clause and the Equal Access Act to the school's refusal to permit the formation of a student discussion group. Although all these issues asserted in the complaint were resolved by consent decree without any court proceedings, it is clear that the litigation of these questions and any court findings on liability would in no way have implicated the free speech rights of appellants.
 
 
 31
 More specifically, the school officials' practices were either lawful or unlawful, and a determination of this question would not impinge on appellants' ability to exercise their free speech rights at a graduation ceremony. In the words we employed in Harris, the applicants for intervention "ha[ve] no role in the [school] management and cannot be held liable for any unlawful conditions, [and therefore do] not have the right to prevent the [school officials] from effectuating [their] reasoned judgment that it is best not to litigate the action." 820 F.2d at 600.
 
 
 32
 Turning to the remedy phase, we must here assess whether the consent decree approved by the district court alters any of the legal rights and responsibilities of the applicants for intervention. See id. The single section of the consent decree which appellants cite as infringing their rights is the first paragraph, which states:
 
 
 33
 1. Defendants, their successors, agents, employees, and those acting by their invitation shall not pray, proselytize with respect to religion, or engage in any religious ceremony or activity during the annual commencement exercises or any other official event at the Downingtown Senior High School. Except with respect to students invited to speak at graduation, nothing in this agreement shall be interpreted to restrict any student's first amendment rights.
 
 
 34
 Joint App. at A-61 (emphasis added).
 
 
 35
 As appellants point out, this consent decree provision, on its face, clearly permits an infringement of otherwise existing First Amendment rights of students. The question for our determination is whether there are any otherwise existing rights. Since the First Amendment does not require the government to permit unfettered access to its property, the answer depends upon whether or not the graduation ceremony at Downingtown Senior High School qualifies as a public forum.
 
 1. Whether the Graduation is a Public Forum
 
 36
 The Supreme Court has adopted a framework of forum analysis to assess whether a government entity must permit speech or expressive activity on its property. In Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Court set forth three types of forums that a government may establish. First, are "quintessential public forums" such as streets and parks in which the state can only enforce time, place, and manner restrictions, or content-based restrictions that are necessary to serve a compelling state purpose. Id. at 45, 103 S.Ct. at 954. Second, are "designated public forums," which the state creates by deliberately opening them to the public. As long as a government entity maintains such a forum, it is subject to the same restrictions as a quintessential public forum. Id. at 45-46, 103 S.Ct. at 954-56. Thus, in either type of public forum, a content-based restriction is only permissible if it can survive strict scrutiny.
 
 
 37
 The third and final category is the "non-public forum." Here, the state may enforce not only time, place, and manner restrictions, but also any other reasonable restriction that is not based on an attempt to suppress a particular viewpoint. Id. at 46, 103 S.Ct. at 955. Thus, these restrictions may exclude certain categories of speech by subject matter and type of speaker, provided that the rules are reasonable and viewpoint neutral. Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985).
 
 
 38
 There is no question that the Downingtown Senior High School graduation ceremony is not a quintessential public forum. Rather, the present dispute centers on whether the commencement is a designated public forum or a non-public forum. The determination of whether the government has designated a public forum is based upon two factors: governmental intent and the extent of use granted. Gregoire v. Centennial School Dist., 907 F.2d 1366, 1371 (3d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990). We must also bear in mind that "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802, 105 S.Ct. at 3449.
 
 
 39
 To assess government officials' intent under the first factor, we focus on their policies and practices, the nature of the property, and the compatibility of the property with expressive activity. Cornelius, 473 U.S. at 802, 105 S.Ct. at 3448. When examining the extent of use granted, we must be mindful that a designated public forum "may be so designated for only limited uses or for a limited class of speakers." Student Coalition for Peace v. Lower Merion School Dist. Bd. of School Directors, 776 F.2d 431, 436 (3d Cir.1985). Restrictions of this type do not mean that the forum is non-public, but show that the government has created a "limited public forum," a subset type of designated public forum, whose scope is circumscribed either by subject matter or category of speaker.
 
 
 40
 We are guided in this inquiry by several prior cases that have considered whether a given facility owned and operated by a public school constitutes a designated public forum. Most significantly, in Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), the Supreme Court held that a public high school's student newspaper was not a designated public forum. The student plaintiffs in Hazelwood alleged that the decision of school officials to censor and delete certain articles concerning the subjects of pregnancy and divorce, violated their First Amendment free speech rights.
 
 
 41
 En route to its holding in Hazelwood that the newspaper was a non-public forum, the Supreme Court distinguished its prior decision in Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), which had permitted a broad scope for student free speech. Tinker held that a school's policy prohibiting junior and senior high school students from wearing black armbands to protest the Vietnam War, in the absence of any showing that the conduct would "materially and substantially interfere with the requirements of appropriate discipline," id. at 509, 89 S.Ct. at 737, or infringe the rights of other students, id. at 508, 89 S.Ct. at 737, violated the students' free speech rights. The Hazelwood court found that Tinker had simply raised the question of whether a school must tolerate certain expressive activity, whereas the case before it asked "whether the First Amendment requires a school affirmatively to promote particular student speech." Hazelwood, 484 U.S. at 270, 108 S.Ct. at 569. In the latter context, it held, forum analysis was appropriate.
 
 
 42
 The Hazelwood court grounded its conclusion that the newspaper was not a public forum upon findings that the newspaper was sponsored by the school as part of the regular educational curriculum, that the journalism teacher exercised a great deal of control over the final product, and that school officials had not opened the paper to indiscriminate use by the student body or even by the student reporters and editors. Id. 108 S.Ct. at 568-69. The Court also noted that the paper might reasonably be seen to bear the imprimatur of the school. Id. 108 S.Ct. at 569. Since the Court found that the newspaper was a non-public forum, it further held that any reasonable non-viewpoint-based restrictions were acceptable, provided that the school officials' regulations were "reasonably related to legitimate pedagogical concerns." Id. 108 S.Ct. at 571.
 
 
 43
 The Supreme Court also engaged in a type of public forum analysis in Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), which involved a university's policies for granting various student organizations access to its facilities. Although the case was decided before the Supreme Court fully articulated its public forum doctrine in Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Widmar court framed the inquiry in public forum terms, as whether the university, having "opened its facilities for use by student groups ... can now exclude groups because of the content of their speech." 454 U.S. at 273, 102 S.Ct. at 276. The court held that because the university had recognized approximately 100 student groups and permitted them to meet on campus, it had created a public forum which it was also required to open to student religious organizations.
 
 
 44
 Our Court has also considered the public forum doctrine in the context of public schools' access policies. Most recently, in Gregoire v. Centennial School Dist., 907 F.2d 1366 (3d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990), we examined an unsuccessful attempt by a non-student religious organization to secure permission to use a public high school's auditorium. We observed that the school had opened its auditorium extensively to various groups including local labor unions and the Rotary Club, id. at 1374, and had even permitted religious speech in an afternoon student forum, id. at 1379, but had only denied access for an evening event by the particular non-student religious group. In this manner, the school had demonstrated its intent to open the auditorium to a wide variety of expressive activity, and had simply singled out the plaintiff group for discriminatory treatment. As a result, we held that the school had designated the auditorium as a public forum.
 
 
 45
 In reaching our conclusion in Gregoire, we relied in part on the Supreme Court's holding in Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), that religious groups must be included under open forum policies. We found that Widmar 's logic was not restricted to the university level, particularly because the high school's practices at issue in Gregoire demonstrated that in other contexts the school had trusted the maturity of its students. 907 F.2d at 1377-78. In this respect, we also cited the Supreme Court's decision in Board of Educ. v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). See 907 F.2d at 1378. Mergens upheld the constitutionality of the Equal Access Act, 20 U.S.C. §§ 4071-74 (1988), which statutorily extended Widmar 's holding to public secondary schools. Furthermore, we pointed out in Gregoire that in examining school officials' intent, we must consider their acts, and not their argument in litigation that they had no desire to create a forum. 907 F.2d at 1374.
 
 
 46
 In Student Coalition for Peace v. Lower Merion School Dist. Bd. of School Directors, 776 F.2d 431, 436 (3d Cir.1985), by contrast, we held that another public school's athletic field did not qualify as a public forum. In that case, the plaintiffs sought to hold a peace demonstration on the school's athletic field. As in Gregoire, many student and external organizations had been granted access, but we further found that authorization for use was not granted as a matter of course, 776 F.2d at 436, and many other groups had also been denied permission. Id. at 434. Thus, unlike the religious group denied access in Gregoire, the student peace group had not been singled out, and the school policies at issue in Student Coalition for Peace did not demonstrate an intent to designate the field as a public forum.
 
 
 47
 Under the analysis required by these precedents, it appears unlikely that the commencement exercises at Downingtown Senior High School have been designated as a public forum. The process for setting the format and contents of a graduation ceremony are more likely to resemble the tightly controlled school newspaper policies at issue in Hazelwood than the broad group access policies considered in Widmar and Gregoire. Moreover, at least one court has considered the issue of whether a high school graduation ceremony is a public forum, and found that the particular graduation at issue was a non-public forum. See Lundberg v. West Monona Community School Dist., 731 F.Supp. 331 (N.D.Iowa 1989).
 
 
 48
 In Lundberg, a group of students sought an injunction to allow a minister to deliver a benediction at their commencement. Thus, although the case did not involve a motion to intervene, the plaintiffs' free speech claims were similar to those of the applicants for intervention in the present suit. The Lundberg court premised its conclusion that no public forum had been created on its findings that school officials organized and sponsored the graduation ceremony at issue and had "the sole discretion to dictate its content," and that "[w]hile the school [could] not dictate the actual words spoken, [it did] retain control over the type of speech admissible at the ceremony." Id. at 337. In addition, the court stated that "[g]raduation ceremonies have never served as forums for public debate or discussions, or as a forum through which to allow varying groups to voice their views." Id. at 339. Lundberg also relied on the Supreme Court's decision in Hazelwood, noting that school officials were legitimately concerned that the content of the graduation bore the imprimatur of the state. Id. at 338-39.
 
 
 49
 Nonetheless, it is certainly possible that the commencement exercises at Downingtown Senior High School could qualify as a public forum, and nothing in the present record demonstrates otherwise. More specifically, although the terms of the consent decree suggest that the pool of potential graduation speakers is confined to members of the school community and invited guests, this simply indicates that any forum created is a limited one, and does not preclude a finding that the ceremony has been designated as a public forum. See Hazelwood, 484 U.S. at 267, 108 S.Ct. at 568 (school facilities may become public forums if " 'by policy or by practice' [school officials have] opened those facilities 'for indiscriminate use by ... some segment of the public, such as student organizations' ").
 
 
 50
 If, for example, school officials have authorized students to choose which of them will speak, and have permitted these speakers to select their own topics, including controversial subject matters, then officials may have created a limited public forum. Not only would such a practice demonstrate an intent to foster public discourse, but it would avoid attaching the imprimatur of the school to the views expressed in students' speeches. Moreover, we must reiterate our cautionary admonishment from Gregoire, that an assessment of school officials' intent should be governed by their acts, and not by their bald assertions that they had no desire to create a public forum. 907 F.2d at 1374.
 
 
 51
 Yet, given the procedural history of this case, there are no established facts in the record as to the nature and history of commencement ceremonies at Downingtown Senior High School. Public forum analysis is, however, highly fact-dependent, and this question cannot be decided without a factual record. The Brody group contends in its brief that the graduation ceremony is not a public forum, because school officials have closely regulated the content of graduation speeches by providing the topic for and editing these speeches. Appellee's Brief at 20-21. While we agree that if true, such facts would suggest that the graduation has not been designated as a public forum, see Hazelwood, 484 U.S. at 267-70, 108 S.Ct. at 567-69; Lundberg, 731 F.Supp. at 337, there are no such facts in the record, and appellees' brief does not cite to any.
 
 
 52
 Rather, because the motion to intervene was decided on the motion papers which included no affidavits, and the underlying suit was resolved by consent decree without any development of facts, the factual record is barren. We have no information as to such critical facts as who selects the topics for graduation speeches and by what process, or how many graduation speakers address each commencement and by what method they are chosen. Nor do we know how broadly participatory the ceremonies have been or what issues and subjects have been discussed in the past.
 
 
 53
 As a result, the present record is insufficient to make any final decision on the public forum issue. In fact, counsel for the Brody group conceded this point at oral argument. (Tr. at 33). Consequently, this case must be remanded for development of the relevant facts and a decision by the district court as to whether the Downingtown Senior High School graduation ceremony constitutes a designated public forum. The outcome of this assessment on remand will determine which of two alternate paths must then be followed.
 
 
 54
 2. Whether the Speech Restrictions are Permissible if the
 
 Graduation is a Designated Public Forum
 
 55
 As we have noted above, if the district court determines that the graduation ceremony is a designated public forum, then any restrictions imposed on speech which falls within the scope of that forum must survive strict scrutiny through a showing that these restrictions are narrowly drawn to further a compelling state purpose. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-56, 74 L.Ed.2d 794 (1983). The allegedly compelling interest asserted by the Brody group and the school officials is that permitting religious speech at graduation would violate the establishment clause. If such a violation can be demonstrated, this would constitute a compelling interest. See Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) ("We agree that the interest of the University in complying with its constitutional [establishment clause] obligations may be characterized as compelling."). Consequently, if the regulations are narrowly drawn to further this interest, restrictions against religious speech could be permissible even in a public forum.
 
 
 56
 If the speech limitations at issue can meet this test, there would be no basis upon which to attack the consent decree, and the Fitzgerald group would not possess a cognizable legal interest. If, however, the restrictions on speech could not survive strict scrutiny, then under the first prong of the intervention test, the Fitzgerald group would have a sufficient legal interest entitling them to intervene and participate as a party in the formation of a new settlement agreement.
 
 
 57
 The speech restrictions at issue here are those contained in paragraph one of the consent decree, as quoted above. These regulations were adopted by the school officials in negotiations with the Brody group. Although we recognize that the defendant school officials have expressly denied liability, Joint App. at 60, for purposes of analysis we may still view the consent decree as a proposed remedy for the establishment clause violations alleged in the Brody group's complaint. Thus, in order to determine whether the school officials possessed a compelling interest to adopt such restrictions, the district court must assess whether the prior policies permitting religious speech at graduation would pose problems under the establishment clause.
 
 
 58
 For the past two decades, courts have applied the three pronged test of Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), to determine whether a given practice violates the establishment clause.[6] Under Lemon, a government policy is constitutional if (1) it has a secular purpose; (2) its primary effect neither advances nor inhibits religion; and (3) it does not create excessive entanglement of the government with religion. Id. at 612-13, 91 S.Ct. at 2111. This assessment, like the public forum analysis, is dependent on the particular undeveloped facts regarding how graduation ceremonies have been conducted at Downingtown Senior High School.
 
 
 59
 Moreover, this term the Supreme Court may provide some further guidance on this issue in Weisman v. Lee, 908 F.2d 1090 (1st Cir.1990), cert. granted, --- U.S. ----, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991), which held below that invoking the deity in a benediction and invocation at a public high school graduation violated the establishment clause. We recommend that if on remand the district court finds that a public forum exists, the court should wait for the Supreme Court's decision in Weisman before conducting its inquiry into whether the speech restrictions in the consent decree may survive strict scrutiny.
 
 
 60
 If upon completion of its analysis the district court determines that this is a designated forum and that no establishment clause problem exists, then the court must find that there is no compelling interest to support the consent decree's speech restrictions, and the Fitzgerald group may be deemed to possess a legally cognizable interest in this dispute. Alternatively, should the district court find that school officials do have a compelling interest under the establishment clause, the district court must then consider whether the consent decree's provisions have been narrowly tailored to further this interest.
 
 
 61
 3. Whether the Speech Restrictions are Permissible if the
 
 Graduation is a Non-Public Forum
 
 62
 Should the district court find that the Downingtown Senior High School commencement is a non-public forum, then school officials are free to enforce restrictions "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985). In the school context, limitations on speech in non-public forums are permissible if they "are reasonably related to legitimate pedagogical concerns." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 272, 108 S.Ct. 562, 570, 98 L.Ed.2d 592 (1988). Moreover, school officials must be permitted to "retain the authority to refuse ... to associate the school with any position other than neutrality on matters of political controversy." Id. 108 S.Ct. at 570.
 
 
 63
 A wide variety of policy justifications may pass muster under this test. More specifically, "reasonable" grounds for content based restrictions include the desire to avoid controversy, Cornelius, 473 U.S. at 811, 105 S.Ct. at 3453, and an interest in maintaining the appearance of neutrality, Student Coalition for Peace v. Lower Merion School Dist. Bd. of School Directors, 776 F.2d 431, 437 (3d Cir.1985), provided that these are not simply pretexts for viewpoint discrimination. As the Supreme Court stated in Cornelius, "[a]lthough the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas." 473 U.S. at 811, 105 S.Ct. at 3453. Moreover, even though commencement exercises are arguably not part of the educational curriculum, Hazelwood stands for the proposition that school officials are to be accorded broad discretion in regulating speech in all school forums that are non-public.
 
 
 64
 Consequently, the speech restrictions at issue in the present case could easily meet this reasonableness standard. For example, school officials may wish to prohibit all religious speech at a graduation ceremony in order to avoid offending anyone in the audience, who may not share the speaker's religious beliefs. Officials might also aim to prevent controversy and to maintain neutrality as between religion and non-religion. Since the consent decree's provisions appear to exclude all religious speech and not just one particular viewpoint, such a limitation would constitute a permissible content-based restriction.
 
 
 65
 As a result, if the district court determines on remand that no public forum exists, it should consider whether the restrictions are in fact reasonable in light of the purpose served by the forum and whether they are viewpoint neutral. If the district court so finds, it need not proceed any further in the intervention as of right inquiry.
 
 B. Impairment of Any Legal Interest
 
 66
 Once an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit. Under this element of the test, the Fitzgerald group must demonstrate that their legal interests "may be affected or impaired, as a practical matter by the disposition of the action." Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir.), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). In making this determination, we are required to assess "the practical consequences of the litigation," and " 'may consider any significant legal effect on the applicant's interest.' " Id. at 601 (quoting National Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir.1978)).
 
 
 67
 It is not sufficient that the claim be incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. Harris, 820 F.2d at 601. Yet, this factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant stare decisis effect on their claims, or if the applicants' rights may be affected by a proposed remedy. Id.
 
 
 68
 An applicant need not, however, prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief. The possibility of a subsequent collateral attack does not preclude an applicant from demonstrating that his or her interests would be impaired should intervention be denied. Such a holding would reverse our policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks. See Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1051 (3d Cir.1980) (permitting collateral attack on consent decree only because the district court "did not retain jurisdiction over the decree and thus direct intervention [wa]s no longer available"). Moreover, since in the present case even the amended version of the motion to intervene was filed within two weeks of the complaint, it would set a poor precedent to hold that the Fitzgerald group must resort to a collateral attack simply because the district court failed to consider their motion before entering the consent decree.
 
 
 69
 Thus, we find that if the Fitzgerald group can show that they possess a legal interest in this action, then it naturally follows that such an interest would be affected by this litigation. As stated above, the consent decree explicitly limits the First Amendment rights of students; consequently, if the students possess a cognizable legal interest in exercising free speech at Downingtown Senior High School graduation ceremonies, such an interest is clearly impaired by the terms of the consent decree.
 
 C. Adequacy of Representation
 
 70
 Under this final element of the test, "[t]he burden, however minimal ... is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir.1982). Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit. Id.
 
 
 71
 There is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate. Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 970, 973 (3d Cir.1982). Other courts have held, particularly in the context of school desegregation cases, that this presumption applies when students seek to intervene in cases against school officials, because school officials are charged by law with representing the interests of students. See, e.g., United States v. South Bend Community School Corp., 692 F.2d 623, 627 (7th Cir.1982).
 
 
 72
 In the present case, the Fitzgerald group does not allege that there has been any collusion between school officials and the Brody group, but they do assert that they have rebutted the presumption of representation because their interests diverge from those of the defendant school officials, and because the defendants have not diligently litigated this lawsuit. While the parties have vigorously contested the second of these arguments on this appeal, only the first has merit.
 
 
 73
 The contention that the school officials have not actively litigated this case must be rejected as a basis for finding inadequate representation. Although the record is unclear as to the extent of negotiations between the parties to the underlying suit, and as to whether the Fitzgerald group received adequate notice of the proposed settlement, we believe that this aspect of the inquiry has received undue emphasis by the parties. Defendants are fully entitled to choose to negotiate a consent decree rather than litigate the case on the merits. As we have previously stated:
 
 
 74
 a consent decree may be simply "the inescapable legal consequence of application of fundamental law to [the] facts. That [intervenors] would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the [defendants] did not adequately represent their interests in the litigation."
 
 
 75
 Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976) (quoting United States v. Board of School Comm'rs, 466 F.2d 573, 575 (7th Cir.1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973)) (alterations in original).
 
 
 76
 The divergence of interests argument, however, is a strong one, at least as it pertains to the remedial stage of the litigation. We have already found that the Fitzgerald group has no legally cognizable interest in the merits phase. The school officials represented any interests they had in maintaining the school's prior policies, and an applicant for intervention "can have no interest is assuring [the perpetuation of] unconstitutional conditions." Harris, 820 F.2d at 601. In the remedial phase, however, the Fitzgerald group's interests have clearly diverged from those of school officials. Appellants seek to maximize their freedom of speech and to avoid censorship by the very school officials who are purported to represent their interests in this litigation. Since the Fitzgerald group's claims pit the interests of students in asserting control over the content of graduation speeches, directly against those of school officials in maintaining their authority over commencement ceremonies, we cannot expect school officials to be vigorous in defending the applicants' legal interests.
 
 
 77
 Thus, if the district court finds that the Fitzgerald group does possess a legally cognizable free speech interest at the remedial phase of this litigation, this interest is not adequately represented, and the applicants can meet this final prong of the test for intervention as of right.
 
 V. PERMISSIVE INTERVENTION
 
 78
 Should intervention as of right be denied, the Fitzgerald group has alternatively sought permissive intervention. Whether to grant permissive intervention under Rule 24(b), as the doctrine's name suggests, is within the discretion of the district court, and as noted above, this decision is reviewed only for abuse of discretion. Harris, 820 F.2d at 597. In the present case, the district court denied permissive intervention on the ground that "[t]he prejudice that would result in permitting the applicants to intervene outweighs any identifiable benefit to judicial economy." Slip op. at 16-17. Although the district court did not explain this finding, it appears that the court was referring to the fact that the consent decree had already been approved, and that permitting intervention would require reopening the negotiations. Since this state of affairs resulted from the district court's failure to decide the pending intervention motion before reviewing the proposed consent decree, we are troubled by the possibility that the district court based its holding on this ground.
 
 
 79
 Nonetheless, if the Fitzgerald group cannot meet the test for intervention as of right, then, under the circumstances of this case it would likely be within the district court's discretion to deny permissive intervention as well. More specifically, should the district court conclude on remand that the Downingtown Senior High School graduation ceremony is not a public forum, then appellants would have only a minimal interest in the litigation. Thus, if intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.
 
 VI. CONCLUSION
 
 80
 Under Rule 24(a)(2), appellants are not entitled to intervene at the merits stage of this litigation. Yet, because the present record does not enable us to determine whether the applicants for intervention possess a legally cognizable interest in the remedial phase of this action, we must remand this case for further factual findings.
 
 
 81
 If the district court determines on remand that the commencement exercises at Downingtown Senior High School may be characterized as a non-public forum, then the district court must determine whether the speech restrictions imposed in the consent decree survive the reasonableness test applicable to non-public forums. If they do survive the test, the Fitzgerald group would have no legally cognizable interest in this litigation. If they do not survive, the Fitzgerald group would possess a sufficient legal interest in the controversy under the first prong of the intervention test.
 
 
 82
 On the other hand, if the district court determines that a public forum has been created, then it must consider whether the consent decree's speech restrictions can survive strict scrutiny. If the consent decree's provisions pass this test, this would also eliminate any cognizable legal interest asserted by the Fitzgerald group, and these applicants would not be entitled to intervene as of right. If, however, the district court finds that the speech restrictions in the consent decree cannot survive strict scrutiny, then appellants do possess a sufficient legal interest in this controversy under the first prong of the intervention test.
 
 
 83
 We have further found that if any such legal interest exists, it would be impaired by the consent decree and it has not been adequately represented by the existing parties. Thus, under this final scenario, the Fitzgerald group could also meet each of the remaining elements of the Rule 24(a) test, and they would be entitled to intervene as of right.
 
 
 84
 Such intervention would be as a party defendant entitled to participate fully "in the formation of the terms of the settlement agreement in this case." Harris v. Pernsley, 820 F.2d 592, 600 (3d Cir.), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). The district court would therefore need to vacate the existing consent decree, and permit the parties to enter new negotiations.[7]
 
 
 85
 Finally, if at any point on this decision tree the district court determines that intervention as of right is not available, then it should reconsider whether to grant permissive intervention under Rule 24(b). This inquiry should be conducted in light of our analysis above of the competing interests at stake in this case. Moreover, because the Fitzgerald group's intervention motion was filed so soon after the complaint, the district court should not consider the present potential for delay as a factor counseling against intervention.
 
 
 86
 We will thus remand this case for further proceedings consistent with this opinion.
 
 
 
 [1]
 At oral argument, counsel for the school officials asserted that various members of the Fitzgerald group and their attorney did attend a school board meeting on September 12, 1990, at which the board debated whether to adopt the proposed consent decree. (Tr. at 46-47). The record, however, is barren on this subject, and in any event it is clear that the Fitzgerald group did not participate in the negotiations during which the proposed decree was hammered out
 
 
 [2]
 The full text of the consent decree's provisions is as follows:
 
 
 [1]
 Defendants, their successors, agents, employees, and those acting by their invitation shall not pray, proselytize with respect to religion, or engage in any religious ceremony or activity during the annual commencement exercises or any other official event at the Downingtown Senior High School. Except with respect to students invited to speak at graduation, nothing in this agreement shall be interpreted to restrict any student's first amendment rights
 
 
 [2]
 Defendants, their successors, agents, and employees shall not sponsor, solicit or plan any baccalaureate service. A request to hold a baccalaureate at or on school facilities shall be treated in the same manner as any other request under the Downingtown Area School District Administrative Guidelines Section 707 relating to use of facilities
 
 
 [3]
 If any student group complies with the requirements of the Federal Equal Access Act, 20 U.S.C. sections 4071-4074, the defendant will authorize its formation and make facilities available to it in accordance with the Equal Access Act
 
 
 [4]
 Either party shall have a right to petition the court for relief from this Consent Decree if the law as it now exists and upon which this Consent Decree is based changes in such a way to make enforcement of the Consent Decree unconstitutional or inconsistent with governing law
 
 
 [5]
 Defendants shall within 30 days settle plaintiffs' entitlement to attorney's fees. If this matter is not resolved within that time, plaintiffs shall be free to petition the Court for such an award
 
 
 [6]
 Plaintiffs shall dismiss their Motion for Contempt with prejudice
 Joint App. at A-61.
 
 
 [3]
 These parents also assert claims on the basis of their status as taxpayers, but they are unable to meet the taxpayer standing test set forth in Flast v. Cohen, 392 U.S. 83, 105-06, 88 S.Ct. 1942, 1955-56, 20 L.Ed.2d 947 (1968), because this case involves injunctive relief that does not implicate the government's treasury. Moreover, the Fitzgerald group's claims are not asserted under the establishment clause which does specifically limit the government's spending power, id. at 105, 88 S.Ct. at 1955, but under the First Amendment's free speech clause
 
 
 [4]
 Although this fact is not part of the record below, the parties to this appeal have submitted a stipulation pursuant to Fed.R.App.P. 10(e), stating that these two parents do have such younger children in the Downingtown school system. Rule 10(e) permits us, in our discretion, to supplement the record on appeal in this manner. See Salinger v. Random House, Inc., 818 F.2d 252, 253 (2d Cir.), cert. denied, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987); Dickerson v. Alabama, 667 F.2d 1364, 1367 (11th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). Because this potential mootness barrier arose only after briefing had been completed on this appeal, we choose to exercise our discretion under this rule. We also note that although parties may not waive jurisdictional defects by stipulation, Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975), an admission of a fact which would clearly support jurisdiction, does not similarly violate Article III
 
 
 [5]
 For the sake of clarity and because all the individuals who joined in the motion to intervene assert the same legal arguments, we will continue to refer to these two parents with justiciable claims as the "Fitzgerald group," "appellants," or the "applicants for intervention."
 
 
 [6]
 Although appellants have not made the argument, some courts have considered whether in assessing the permissibility of religious speech, courts should not apply the Lemon test, but instead apply the test from Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). In Marsh, the Court upheld the Nebraska legislature's practice of opening its sessions with a religious invocation by a chaplain. The Court did not apply Lemon, and instead based its decision upon the long historical acceptance of this legislative practice. The Supreme Court, however, has never extended the Marsh test, see Edwards v. Aguillard, 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 2577 n. 4, 96 L.Ed.2d 510 (1987), and other courts have also refused to do so. See, e.g., Jager v. Douglas County School Dist., 862 F.2d 824, 828-29 (11th Cir.1989); id. at 835 (Peck, J., concurring)
 
 
 [7]
 As we have determined in Part IV A, any such intervention by the Fitzgerald group would be at the remedy stage and not at the merits stage, should that ever reemerge