

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-1994

# United States of America v. Alcan Alum. Inc., et al.

Precedential or Non-Precedential:

Docket 93-1099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Alcan Alum. Inc., et al." (1994). *1994 Decisions.* Paper 28.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/28

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 93-1099

————————

UNITED STATES OF AMERICA

v.

ALCAN ALUMINUM, INC.;
CHAMPION AUTO GENERATOR SERVICE, INC.;
INTERNATIONAL FLAVORS AND FRAGRANCES, INC.;
KALAMA CHEMICAL, INC.; SCHULTZ ELECTROPLATING, INC.;
S&W WASTE, INC.; McADOO ASSOCIATES, INC.;
PAYSO, INC.; EDWARD L. PAYER; NOREEN PAYER

v.

AT&T TECHNOLOGIES, INC.;
CPS CHEMICALS COMPANY, INC.;
EAST COAST POLLUTION CONTROL, INC.;
KNOLL INTERNATIONAL, INC.;
LEHIGH STRUCTURAL STEEL COMPANY;
JOHN E. POTOCHNY; BEATRICE/HUNT WESSON, INC.;
PROCTER & GAMBLE MANUFACTURING COMPANY;
21 INTERNATIONAL, INC.; SPECIAL METALS CORPORATION;
ACTIVATED METALS & CHEMICALS, INC.;
TELEDYNE VASCO, A Division of Teledyne Industries, Inc.;
TELEDYNE WAH CHANG HUNTSVILLE,
A Division of Teledyne Industries, Inc.;
WITCO CORPORATION, on behalf of itself
and the RICHARDSON COMPANY;
CBP RESOURCES; FIRST VALLEY BANK

The Trustees of the McAdoo Associates
Site Trust Fund ("the Trustees"),
proposed intervenors,
                              Appellants

————————————————————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 88-04970)

————————————

1

Argued December 2, 1993

Before:  SCIRICA and ALITO, <u>Circuit</u> <u>Judges</u>
and BASSLER, <u>District</u> <u>Judge</u>*

(Filed  May 25, l994  )

ANTOINETTE R. STONE, ESQUIRE (Argued)
Buchanan Ingersoll
1200 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103

   Attorney for Appellants


JOHN T. STAHR, ESQUIRE (Argued)
United States Department of Justice
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C. 20026

EVELYN YING, ESQUIRE
United States Department of Justice
P.O. Box 23795
L'Enfant Plaza Station
Washington, D.C. 20026

   Attorneys for Appellee, United States of America


DOUGLAS F. SCHLEICHER, ESQUIRE (Argued)
Saul, Ewing, Remick & Saul
3800 Centre Square West
Philadelphia, Pennsylvania 19102

   Attorney for Appellee,
   International Flavors and Fragrances, Inc.


ROBERT B. McKINSTRY, JR., ESQUIRE (Argued)
Ballard, Spahr, Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103

   Attorney for Appellee, First Valley Bank

*The Honorable William G. Bassler, United States District Judge for the District of New Jersey, sitting by designation.

JOEL SCHNEIDER, ESQUIRE
Manta & Welge
One Commerce Square, 37th Floor
2005 Market Street
Philadelphia, Pennsylvania 19103

   Attorney for Appellee, Kalama Chemical, Inc.


ALLEN E. ERTEL, ESQUIRE
Allen E. Ertel & Associates
30 West 3rd Street, Suite 301
Williamsport, Pennsylvania 17701

   Attorney for Appellee, Schultz Electroplating, Inc.


MARK N. COHEN, ESQUIRE
Margolis, Edelstein & Scherlis
The Curtis Center, 4th Floor
Sixth and Walnut Streets
Philadelphia, Pennsylvania 19106

   Attorney for Appellee, S&W Waste, Inc.


HOWARD M. KLEIN, ESQUIRE
Conrad, O'Brien, Gellman & Rohn
1515 Market Street, 16th Floor
Philadelphia, Pennsylvania 19102

   Attorney for Appellee, AT&T Technologies, Inc.


DAVID E. LODER, ESQUIRE
Duane, Morris & Heckscher
4200 One Liberty Place
Philadelphia, Pennsylvania 19103-7396

   Attorney for Appellee, Lehigh Structural Steel Company


RODNEY B. GRIFFITH, ESQUIRE
JANICE V. QUIMBY-FOX, ESQUIRE
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

   Attorneys for Appellee, Beatrice/Hunt Wesson, Inc.

THEODORE L. GARRETT, ESQUIRE
Covington & Burling
1201 Pennsylvania Avenue, N.W.
P.O. Box 7566
Washington, D.C. 20044

FREDERICK W. ROM, ESQUIRE
Lavin, Coleman, Finarelli & Gray
10000 Midlantic Drive, Suite 300 West
Mount Laurel, New Jersey 08054

   Attorneys for Appellee, Procter & Gamble Manufacturing Company


RANDALL L. SAROSDY, ESQUIRE
Akin, Gump, Strauss, Hauer & Feld
1333 New Hampshire Avenue, N.W.
Suite 400
Washington, D.C. 20036

   Attorney for Appellee, 21 International, Inc.

_____

OPINION OF THE COURT

_____


SCIRICA, Circuit Judge.


        In this appeal we must decide whether a party who has entered into a consent decree with the Environmental Protection Agency for the cleanup of a superfund site may intervene in subsequent litigation over the same site.  We believe that, provided it can demonstrate it has a protectable interest, an early settlor may intervene in the later litigation as of right.  On these facts, however, the right to intervene hinges on whether the applicant had a protectable interest at risk.  Because it is unclear from the record whether the intervenor's interest was

7

affected by the subsequent consent decree, we will vacate the district court's orders denying the motion to intervene and approving the subsequent consent decree, and remand for a determination of whether the second consent decree affected the intervenor's rights under the first decree.

## I.

### FACTS & PROCEDURE

This appeal arises out of the cleanup of the McAdoo site, a parcel of land in Schuylkill County, Pennsylvania. Once used for strip mining, the McAdoo site was used for waste incineration and recycling from 1975 until it closed in 1979. At that time there were approximately 6,800 storage drums and several 10,000 and 15,000 gallon storage tanks of hazardous waste at the site.

### The Air Products Litigation

In 1987 the United States began proceedings over the release and threatened release of hazardous material at the McAdoo site.[0] On June 3, 1988, the government entered into a consent decree with 65 Potentially Responsible Parties (PRPs), the "Air Products defendants," who agreed to reimburse the government for approximately $790,000 of past costs and to undertake a remedial program to prevent any future release of hazardous substances.[0] They also agreed to pay all of the long

---

[0]Pennsylvania's Department of Environmental Resources later intervened as a plaintiff.

[0]The Air Products defendants' consent decree did not address surface or ground water contamination at the McAdoo Site. EPA has notified the parties that future litigation may be necessary to address this problem.

term operations and maintenance costs. In exchange, the government agreed not to seek reimbursement for any of its past remedial costs and to allow the Air Products defendants to seek reimbursement for as much as 25% of their clean-up costs, provided the government could successfully recover those costs from other non-settling PRPs.[0]

The agreement contained two other notable provisions. First, it contained a provision reserving the Air Products defendants' right to sue all non-settling parties for contribution. Second, it contained a provision stating the government's "present intent" not to include in any future settlement over the McAdoo site a covenant not to sue that was broader than the one contained in the Air Products consent decree.

### The Alcan Litigation

On June 23, 1988 the government began proceedings against another group of PRPs, the "Alcan defendants." In this action, the government sought reimbursement for costs it had previously incurred and a declaration that the Alcan defendants were liable for future response costs. The Alcan defendants and the government reached an agreement in January, 1992. The resultant consent decree was filed in the district court on August 10, 1992, and notice was published in the Federal Register on August 19, 1992. 57 Fed. Reg. 37,556 (1992).

---

[0]The Air Products defendants agreed not to seek reimbursement from the government for any part of the costs of operations and maintenance.

Under the terms of the consent decree the Alcan defendants agreed to reimburse approximately $2 million of the government's response costs. In exchange, the government agreed not to sue the Alcan defendants for: (1) any work covered in the Air Products consent decree, (2) any of the government's oversight costs, (3) response costs incurred before June, 1990, and (4) the government's enforcement costs.[0]

As required by CERCLA, the district court reserved approval of the consent decree to allow for public comment. 42 U.S.C. § 9622(d)(2)(1988). On September 16, 1992, the Trustees of the McAdoo site, on behalf of the Air Products defendants, objected to the consent decree on the grounds that it would extinguish their right to sue the Alcan defendants for contribution. They also argued the covenant not to sue First Valley Bank over surface or ground water contamination violated a provision in the Air Products consent decree where the government stated its intention not to give any other PRP a covenant not to sue broader than the one contained in the Air Products consent decree.

The Trustees also moved to intervene in the government's suit against the Alcan defendants under CERCLA §113(i), 42 U.S.C. § 9613(i)(1988), and Federal Rule of Civil

---

[0]In addition, the government agreed not to sue First Valley Bank in connection with either surface or ground water contamination because it believed First Valley's only ownership interest in the site was as a secured creditor and secured creditors are exempt from liability. See 42 U.S.C. §9607(a)(1)(1988) (imposing liability on a facility's owners), and 42 U.S.C. § 9601(20)(A)(1988) (exempting secured creditors from the definition of owner).

10

Procedure 24(a).[0]  On November 24, 1992, the district court denied the Trustees' motion, holding that § 113(i) was inapplicable, and that the Rule 24 application was untimely and did not reflect "a substantial and direct protectable interest in the litigation."  This timely appeal followed.

The district court had jurisdiction under 42 U.S.C. §§9607 and 9613(b).  We have jurisdiction under 28 U.S.C. § 1291 (1988) because the denial of a motion to intervene is a final, appealable order.  See McKay v. Heyison, 614 F.2d 899, 903 (3d Cir. 1980); Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.), cert. denied, sub nom. Fire Officers Union v. Pennsylvania, 426 U.S. 921 (1976).  We review the denial of a motion to intervene as of right for abuse of discretion.  However, our review "is `more stringent' than the abuse of discretion review we apply to a denial of a motion for permissive intervention." Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992) (quoting Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir.) (internal citation and quotation omitted), cert. denied, sub nom. Castille v. Harris, 484 U.S. 947 (1987)).  We will reverse only if we find the district court "has applied an improper legal standard or reached a decision we are confident is incorrect." Id. (quoting Harris, 820 F.2d at 597).

II.

DISCUSSION

---

[0]The Trustees also sought permissive intervention under Federal Rule of Civil Procedure 24(b).  Because we are unable to determine whether the Trustees' interest is at stake in the Alcan litigation we do not reach this issue.

11

In 1986 Congress passed the Superfund Amendment and Reauthorization Act ("SARA"), Pub. L. 99-499; 100 Stat. 1613 (codified in scattered sections of 42 U.S.C.), which amended CERCLA, 42 U.S.C. §§ 6911, 6911a, 9601-75. Congress' intent in passing SARA was to ensure rapid and thorough cleanup of toxic waste sites. See H.R. Rep. No. 253, 99th Cong., 2d Sess. 55 reprinted in 1986 U.S.C.C.A.N. 2835, 2837. Because Congress believed it could never provide EPA with adequate money or manpower, the new law tried to maximize the participation of responsible parties in the cleanup. Id.

A. Claims under § 113(i).

Among the sections added to CERCLA in 1986 was §113(i), which permits interested parties to intervene as of right in actions under CERCLA or the Solid Waste Disposal Act. 42 U.S.C. § 9613(i).[0] The government challenges the Trustees' ability to intervene in its suit against the Alcan defendants arguing that, under § 113(i), intervention is restricted to persons who wish to

---

[0]Section 113(i) provides:

> In any action commenced under this chapter or under the Solid Waste Disposal Act in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i) (1988).

12

raise health or environmental concerns. Agreeing with the government, the district court held the Trustees could only challenge the consent decree through CERCLA's public comment provision, § 122(d)(2). See United States v. Alcan Aluminum, Inc., No. 88-4970, at 2 n.1 (E.D. Pa. Dec. 1, 1992) (order denying motion to intervene).

When interpreting a statute we look first to the language itself. See Reves v. Ernst & Young, 113 S.Ct. 1163, 1169 (1993). Section 113(i) states, without qualification, that "any person" who meets § 113(i)(2)'s four requirements can intervene as of right in "any action" commenced under CERCLA. We do not believe Congress would have used the phrase "any person may intervene" or "any action under this chapter" if it had intended to restrict intervention to only those persons raising a particular, but unidentified, claim.

Moreover, § 113's language mirrors the language in Federal Rule of Civil Procedure 24(a).[0] That language was added

---

[0]Federal Rule of Civil Procedure 24(a) provides in part:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a) (West 1993).

13

to the rule in 1966 to relax the interest requirement and "to foster more flexible, pragmatic judicial treatment of intervention as of right." Carl Tobias, Standing to Intervene, 1991 Wis. L. Rev. 415, 430 (1991); see James W. Moore, 3B Moore's Federal Practice, ¶ 24.09-1[2], at 24-301 ("The liberalization of Rule 24(a) was not aimed at revising the nature of the applicant's interest, but was focused mainly on relaxing the requirement that the applicant would be bound . . . ). Thus, the same language the government here claims restricts intervention was added to Rule 24 to facilitate intervention. See Fed. R. Civ. P. 24, Notes of Advisory Committee on Rules 1966 Amendment at 100-01 (West 1993); New Orleans Public Serv. Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.) (en banc), cert. denied, sub nom. Morial v. United Gas Pipe Line Co., 469 U.S. 1019 (1984). We do not believe Congress would have used the same language in § 113(i) as was used in Rule 24(a) if it had intended to reach such a different result.

Pointing to the legislative history, the government asks us to find a more limited meaning behind the statute's broad language.[0] "But we do not resort to legislative history to cloud

---

[0] The House Judiciary Committee report, states:
> Finally, the Committee amendment adds a new subsection 113[i] to CERCLA to provide that any person may intervene as a matter of right when that person claims a direct public health or environmental interest in the subject of a judicial action allowed under this section, and when the disposition of the action may impair or impede the person's ability to protect that interest.

a statutory text that is clear." <u>Ratzlaf v. United States</u>, 114 S.Ct. 655, 662 (1994); <u>see</u> <u>also</u> <u>Negonsott v. Samuels</u>, 113 S.Ct. 1119, 1122-23 (1993) ("[W]here [Congress's] will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.") (quoting <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 570 (1982)). Thus, although we recognize a House report suggests a more limited construction, we cannot ignore the clarity of § 113's language. Consequently, we believe that any interested party can intervene under § 113(i).

B. Intervention under Rule 24(a) and § 113(i).

Because of their similarity, courts apply essentially the same test when determining whether to grant an application for intervention under both Rule 24(a) and § 113(i). <u>See, e.g.,</u> <u>Utah v. Kennecott Corp.</u>, 801 F. Supp. 553, 571-72 (D. Utah 1992); <u>Arizona v. Motorola, Inc.</u>, 139 F.R.D. 141, 144 (D. Ariz. 1991); <u>United States v. Acton Corp.</u>, 131 F.R.D. 431, 433 (D.N.J. 1990).[0] As we explained in <u>Brody</u> and <u>Harris</u>, cases under Rule 24(a), an applicant can intervene as of right where:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

H.R. Rep. No. 253, 99th Cong., 1st Sess., pt. 3, at 24 (1985) <u>reprinted</u> <u>in</u> 1986 U.S.C.C.A.N. at 3047.

[0]Although inapplicable in this case, there is one difference between the two tests. Under Rule 24 the burden of proving all four parts of the test falls on the applicant. Under § 113(i) the existing parties must show the applicant's interest is being adequately represented in order to prevent intervention. <u>United States v. Pitney Bowes, Inc.</u>, 1994 U.S. App. Lexis 1318, at *9 (2d Cir. Jan. 26, 1994); <u>Motorola</u>, 139 F.R.D. at 144.

15

Brody, 957 F.2d at 1115; Harris, 820 F.2d at 596.

The district court denied the Trustees' motion to intervene because it found their motion was untimely, and it believed the Trustees did not have a protected interest at stake in the litigation. The Trustees claim their application was timely because it was filed less than two months after they learned the consent decree might jeopardize their right to sue for contribution, and because the government persuaded them to refrain from intervening earlier by giving them false assurances that the Alcan consent decree would not compromise their rights. They also claim their right to seek contribution is a legally protectable interest which the consent decree, if approved, would extinguish.

### 1. Timeliness

The Alcan litigation began on June 23, 1988. The consent decree was filed on August 9, 1992 and the Trustees moved to intervene on September 22, 1992. Arguing the Trustees waited more than four years before moving to intervene, the government claimed the Trustees' motion was untimely. The district court also believed the Trustees' motion was untimely, stating, "upon consideration of the current status of the litigation and the knowledge of the Trustees regarding the discussions leading up to the current consent decree, the motion is untimely." We disagree.

The government misconstrues the timeliness requirement. As used here, timeliness is not just a function of counting days; it is determined by the totality of the circumstances. See NAACP v. New York, 413 U.S. 345, 366 (1973). See generally, James W. Moore, 3B Moore's Federal Practice § 24.13 (timeliness is not merely a function of when the motion was filed relative to the filing of the action). Although the point to which the litigation has progressed is one factor to consider, it is not dispositive. NAACP, 413 U.S. at 366; National Wildlife Fed'n v. Burford, 878 F.2d 422, 433 (D.C. Cir. 1989), rev'd. on other grounds, sub nom. Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990). Moreover, the timeliness requirement is "`an elemental form of latches or estoppel.'" Stallworth v. Monsanto, 558 F.2d 257, 266 (5th Cir. 1977) (citation omitted). As such, timeliness should not prevent intervention where an existing party induces the applicant to refrain from intervening. Cf. id. at 267 ("Since

17

the plaintiffs urged the district court to make it more difficult for the appellants to acquire information about the suit early on, we do not think they should now be heard to complain that the appellants should have . . . appreciated its significance sooner."). Consequently, where a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds. Cf. NAACP, 413 U.S. at 367.

This occurred here. The record demonstrates that the Trustees were aware of the Alcan litigation, and kept in touch with the government's counsel in order to protect their rights. On November 18, 1991, the Trustees' counsel wrote a letter to the government attorney handling the case, confirming the content of their November 1, 1991 telephone conversation. That letter indicates that when, during the course of their conversation, the Trustees' counsel voiced concerns about the possibility of the Alcan consent decree destroying the Trustees' contribution right, the government's attorney assured him that the consent decree would not compromise the Trustees' claim.[0] That letter, which

---

[0]The letter states in part:

> In addition, as we have discussed, the settlement of the Non-Settlors' Litigation which the United State[s] currently contemplates will not protect any of the Non-Settlors from claims for contribution for costs related to the Operation and Maintenance ("O&M") of the Site remedy. In short, O&M will not be a covered matter in any such settlement. . . . If the United States should change its position with respect to any Non-Settlor and that Non-Settlor's liability for O&M, please let me know promptly. In the meantime, I look

18

the government does not challenge, demonstrates the Trustees' intent to contest any consent decree that compromised their right to contribution and that the Trustees refrained from taking earlier action, in part, because of assurances given by the government.

Under these circumstances, the Trustees had no reason to believe they should try to intervene because the government led them to believe their interests were not at stake in the litigation.[0]  Since the government induced the Trustees to refrain from intervening earlier, and the Trustees reasonably relied on that representation, the government cannot credibly complain the motion was untimely. Stallworth, 558 F.2d at 267.

We also believe that, to the extent there is a temporal component to the timeliness inquiry, it should be measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation, not, as the government contends, from the time the applicant learns of the litigation. In so holding, we are breaking no new ground.  The Court of

---

forward to hearing from you once any Consent Decree between the Non-Settlors and the United States is ready to be executed by the parties to it.

Letter from Robert Frank to Arnold Rosenthal (Nov. 18, 1991).
[0]Because the Trustees demonstrated their intent to challenge the consent decree if the decree jeopardized their contribution right and the government does not dispute that the letter accurately reflects the assurances it gave to the Trustees, this case is distinguishable from NAACP, 413 U.S. at 367-68, where the Court held it was not an abuse of discretion to deny a motion to intervene where the applicant had failed to take steps to protect its interest after it became aware of the litigation. Id.

19

Appeals for the District of Columbia Circuit came to the same conclusion in National Wildlife Federation v. Burford, 878 F.2d 422 (D.C. Cir. 1989), rev'd. on other grounds, sub nom. Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990).  There, ASARCO, a company that had staked mining claims on lands affected by a Bureau of Land Management policy sought to intervene in litigation challenging the implementation of that policy. ASARCO's motion was filed 3 years after the litigation began, but, due to a change in the way the agency construed its policy, only 73 days after ASARCO learned its interests were directly affected. Id. at 433-34.  After the district court denied ASARCO's motion to intervene on timeliness grounds the District of Columbia Circuit reversed stating:

> the salient factor is not when ASARCO's motion to intervene was filed with respect to the filing of NWF's original suit . . . . Rather, the relevant time from which to assess ASARCO's right of intervention is when ASARCO knew or should have known that any of its rights would be directly affected by this litigation.

Id. at 433-34.

The Court of Appeals for the Fifth Circuit came to the same conclusion in Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir. 1977).  There, a group of black employees sued Monsanto over civil rights violations resulting from Monsanto's seniority system.  When the two sides began settlement negotiations Monsanto sought court approval to alert its white employees to the possible impact the proposed settlement would have on them. The plaintiffs opposed Monsanto's motion and the court agreed.

20

Id. at 260–61.  When a group of white employees eventually sought to intervene under Rule 24(a) the plaintiffs opposed arguing the motion was untimely.  Id. at 262, 267.  When the district court denied the motion to intervene, the Fifth Circuit reversed.  Holding that timeliness should be measured from the point an applicant knows, or should know, of the risk to its rights, the court explained:

> [A] rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention.  It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high.  Often the protective step of seeking intervention will later prove to have been unnecessary, and the result will be needless prejudice to the existing parties and the would-be intervenor if his motion is granted, and purposeless appeals if his motion is denied.  In either event, scarce judicial resources would be squandered, and the litigation costs of the parties would be increased.

558 F.2d at 264–65.

We agree.  To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights.  The point at which the applicant should have known its rights were at risk is usually a factual determination.  Nonetheless, where a party induces an applicant to refrain from

21

intervening and there is reasonable reliance, the applicant's motion should not fail on timeliness grounds.

Here, the Trustees moved to intervene 43 days after notice of the lodging of the consent decree, the point at which they became aware of the potential risk to their contribution claim. On these facts we believe their application was timely.

### 2. Air Products Defendants' Interest in the Litigation.

We next address whether the Air Products' defendants had a sufficient interest in the litigation, the second prong of the intervention test. The district court held "[the Trustees] do not have a substantial and direct protectable interest in this litigation since the Trustees' claim to contribution is not involved." The Trustees contend they have a statutory right to sue for contribution which approval of the consent decree would extinguish. The government claims the district court was correct because the right to contribution is not a substantive legal right, but instead is merely a contingency.

### a. Sufficient legal interest.

Section 113(f)(1) gives early settling parties a right to sue other PRPs for contribution.[0] The Trustees contend their contribution right is sufficient to support a motion to

---

[0] 42 U.S.C. § 9613(f)(1) provides in part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any action under section 9606 of this title or under section 9607(a) of this title. . . .

22

intervene. In response, the government points to several cases in which courts have found the right to sue for contribution to be merely a contingency rather than a substantive legal right. See, e.g., Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638–41 (1st Cir. 1989); Arizona v. Motorola, Inc., 139 F.R.D. 141; United States v. Vasi, 22 Chem. Waste Litig. Rep. 218 (N.D. Ohio 1991); United States v. Browning-Ferris Industries, 19 Chem. Waste Litig. Rep. 436 (M.D. La. 1989); United States v. Wheeling Disposal Serv., Inc., No. 92-0132-CV-W-1, slip. op. (W.D. Mo. Oct. 1, 1992). But see United States v. Acton Corp., 131 F.R.D. 431, 433–34 (D.N.J. 1990) ("[T]he . . . defendants are not asserting only an economic interest; they seek to protect a statutory right that later may be extinguished.").

With the exception of United States v. Browning-Ferris Industries, 19 Chem. Waste Litig. Rep. 436 (discussed infra at note 14), however, none of the cases cited by the government is analogous because they involve either non-settling parties attempting to intervene in the consent decree of parties who are settling, see Acton, 131 F.R.D. at 432–33; Vasi, 22 Chem. Waste Litig. Rep. at 219; Wheeling Disposal, No. 92-0132-CV-W-1, Slip Op. at 1–3, or non-interested intervenors asserting the rights of third parties, see New Orleans Public Service Inc. v. United Gas Pipe Line Co.("NOPSI"), 732 F.2d 452, 466 (5th Cir.) (en banc) (city asserting the rights of its power supplier), cert. denied, sub nom. Morial v. United Gas Pipe Line Co., 469 U.S. 1019 (1984); Dingwell, 884 F.2d at 638–41 (insurer asserting the rights of its insured). Where the proposed intervenor has not

23

yet settled with the government, it is unclear what, if any, liability it will have.  Thus, any contribution right it might have depends on the outcome of some future dispute in which the applicant may, or may not, be assigned a portion of liability. In that situation, courts have properly found the interest of non-settlor applicants to be merely contingent.[0]

Here, the applicants have already settled with the government.  When a PRP settles with the government it accepts a specific liability.  Unlike the interest of an applicant who has not yet settled, which is contingent in the sense that it may never ripen, the interest of an applicant who has already settled is contingent only in the sense that it cannot be valued.  However, the fact that the interest cannot be valued does not mean it does not exist.  The act of settling transforms a PRP's contribution right from a contingency to a mature, legally protectable interest.[0]

---

[0] For its part, an applicant who raises the rights of a third-party has no interest at all.

[0] In United States v. Browning-Ferris Industries, 19 Chem. Waste Litig. Rep. 436 (M.D. La. 1989), the only other court to rule on a similar set of facts came to a different conclusion. There, as here, the applicant had previously signed a consent decree with the government and maintained that a subsequent consent decree, if approved, would cut off its right to sue non-settling PRPs for contribution. Id. at 437.  The court held the applicant had no interest in the litigation because §113(f)(3)(C) subordinates the rights of all others to the rights of the government. Id. at 439.

We agree that § 113(f)(3)(C) subordinates a settlor's contribution right to the government's right to recover response costs, but we disagree with the decision in BFI.  Section 113(f)(3)(C) makes the settlors' claim subject to the government's claim, but it does not affect either the creation or extinction of the settlors' right to sue for contribution. Therefore, § 113(f)(3)(C) is not helpful in determining whether an interest exists.

24

Our conclusion is in line with the policies behind the SARA amendments.  Congress amended CERCLA because it wanted to encourage early settlement. See United States v. Cannons Engineering Corp., 720 F. Supp. 1027, 1048 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990); Motorola, 139 F.R.D. at 148 ("Congress created CERCLA to encourage settlement, thereby reducing `the time and expense of enforcement litigation that necessarily diverts time and money from cleanup and restoration.'") (citation omitted).  SARA, therefore, gives preference to early settlors by exposing a non-settling PRP to liability for the rest of the cleanup cost even if that exposure exceeds the amount the non-settlor's actions added to the overall cost of the cleanup. Cannons Engineering, 720 F. Supp. at 1040 (the statutory scheme is designed to discourage `free riders' by imposing a greater share of clean-up costs on those who delay agreeing to contribute to remedial action.); see also, Daniel R. Avery, Enforcing Environmental Indemnification Against A Settling Party Under CERCLA, 23 Seton Hall L. Rev. 872, 886 (1993) ("The shifting of responsibility for settlement shortfall to not-settling PRPs therefore provides a real and meaningful incentive for PRPs to settle, and creates `a corresponding detriment to their more recalcitrant counterparts.'").

Permitting intervention should encourage settlements. A PRP, when deciding whether or not to settle, knows the settlement will cap its liability. See  42 U.S.C. § 9613(f)(2); Motorola, 139 F.R.D. at 145.  It also knows it may be able to reduce its liability by suing a non-settling PRP for contribution. See  42

25

U.S.C. § 9613(f)(1).  Given Congress' intent in amending CERCLA, and the development of the interest requirement under Rule 24(a), we believe early settlors have a sufficiently protectable interest in the litigation to permit their intervention.

The government also contends the Trustees' interest is merely economic and is insufficient to support a motion to intervene.  Some courts have stated a purely economic interest is insufficient to support a motion to intervene. See NOPSI, 732 F.2d at 464 ("It is plain that something more than an economic interest is necessary"); Motorola, 139 F.R.D. at 146 (remote economic interest is not enough to support intervention).  But the Air Products defendants have more than just an economic interest.

For example, in NOPSI the Court of Appeals for the Fifth Circuit rejected the City of New Orleans' application to intervene in a settlement between its power supplier, NOPSI, and one of NOPSI's suppliers, United Gas Pipe Line Co. Id. at 455. The Fifth Circuit found the city's interest in the litigation was only economic because the City's only concern in the litigation was to ensure its power costs would not be increased by an adverse decision against NOPSI. Id. at 464-66.  By way of explanation, the court described the type of interest that would support a motion to intervene, stating:

> What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant. This is reflected by the requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest.  The

26

> real party in interest requirement . . .
> `applies to intervenors as well as
> plaintiffs' as does also the rule that `a
> party has no standing to assert a right if it
> is not his own.'"

Id. at 464 (quoting United States v. 936.71 Acres of Land, 418 F.2d 551, 556 (5th Cir. 1969)).

The same is true of Arizona v. Motorola, Inc., 139 F.R.D. 141. There, the U.S. District Court for the District of Arizona denied the application of Motorola, a defendant in a suit brought by the State of Arizona and the City of Phoenix, when it moved to intervene in a second lawsuit brought by the State of Arizona against the City of Phoenix. Citing the Fifth Circuit's analysis in NOPSI, the court held Motorola's interest was only contingent because Motorola was not the real party in interest. Id. at 144–46.

The rule that emerges from these cases is that a party has more than an economic interest where it is the real party in interest and where the applicant would have standing to raise the claim. NOPSI, 732 F.2d at 464. This rationale favors intervention here because the Trustees are the true party in interest with respect to the right to sue non-settlors for contribution.[0] Because we believe the right to seek contribution

---

[0] In order to prove an interest is impeded, the third part of the intervention test, the applicant must demonstrate "a tangible threat to [its] legal interest." Brody, 957 F.2d at 1123 (internal quotation marks and citation omitted). We believe that if, on remand, the district court determines the operations and maintenance which the Air Products defendants agreed to pay is addressed in the Alcan consent decree, the Air Products defendants will have met this burden because § 113(f)(2) makes a party that settles with the government immune from any future contribution action "regarding matters addressed in the

27

under § 113(f)(3)(B) is a legally cognizable interest we must next determine whether that interest is involved in this litigation.

### b. Interest in this litigation.

Under CERCLA, one of the benefits of settling with the government is that a party becomes immune from contribution claims "regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2)(1988).[0]  It appears the statute allows the government to immunize a late settlor from an early settlor's contribution suit by settling with the government. Id.[0]   It

---

settlement." 42 U.S.C. § 9613(f)(2)(1988).  Since, under those circumstances, approval of the consent decree might extinguish the Trustees' right to sue for contribution, this constitutes a sufficient threat to their interest to permit intervention.

Similarly, we believe the Air Products defendants' interests are not being adequately represented in this litigation, the fourth part of the intervention test.  An applicant's rights are not adequately represented where: (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit. Brody, 957 F.2d at 1123.  We believe that where, as here, neither party represents the applicant's interests and the existing parties contest intervention it cannot be said the applicant's interests are being diligently prosecuted.

[0]42 U.S.C. § 9613(f)(2) provides:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.  Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

[0]There is some indication in the legislative history that Congress intended § 113(f) to protect settlors from contribution

28

would appear that if the Alcan consent decree covered the operations and maintenance which the Air Products defendants agreed to pay, the Air Products defendants could not sue for contribution. See supra note 15. Thus, whether the Air Products defendants have an interest at stake in this litigation depends on whether the Alcan consent decree addresses operations and maintenance.

The district court did not expressly determine whether operations and maintenance was addressed in the Alcan consent decree. Instead, it stated, "the Trustees may not intervene as

claims by non-settlors, see H.R. Rep. No. 253, 99th Cong., 1st Sess., pt. 3, at 19, reprinted in 1986 U.S.C.C.A.N. at 3042 (settlement under § 113(f)(2) "gives the settling party protection from the contribution claims of other potentially liable parties . . . ."), while retaining settlors' right to sue for contribution. It is possible that Congress never considered the prospect of a late settlor asserting § 113(f)(2)'s protection against an earlier settlor, but the parties have not pointed to any authority or legislative history on this point. In view of the clear and unambiguous language of § 113(f)(2), however, the statute's plain language must be considered conclusive. Reves, 113 S.Ct. at 1169.

If early settlors have no real opportunity to protect their contribution right, i.e., no opportunity to intervene, we expect that PRPs may discount the right to sue for contribution under § 113(f)(1). This may have the unfortunate effect of removing an incentive to settle early. Although this result may prove unsatisfactory, we cannot ignore the clear and unambiguous language of § 113(f)(2). Any change in the statutory scheme must come from Congress.

We do not believe § 122(d) -- CERCLA's public comment provision -- adequately protects an early settlor's contribution right. The right to intervene gives parties, among other things, the right to participate in discovery, see Fed. R. Civ. P. 26(b)(1), and the right to appeal an adverse judgment, see Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1307 (3d Cir. 1993)("Generally, `only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.'" (quoting Marino v. Ortiz, 484 U.S. 301, 304 (1988)(per curiam)), neither of which accompanies the ability to comment.

29

of right under [Rule] 24(a) since they do not have a substantial and direct protectable interest in this litigation since the Trustees' claim to contribution is not involved." Order at 2 n.1. The district court's statement could be interpreted as an implicit declaration that operations and maintenance is not covered by the Alcan consent decree, i.e., the Trustees' contribution claim is not involved in the Alcan litigation because operations and maintenance is not a part of the consent decree.

We are hesitant to impose this interpretation, however, because neither party who negotiated the Alcan consent decree supports it. The Alcan defendants vigorously challenge this interpretation. They claim operations and maintenance is a matter addressed in the consent decree, and approval of the decree will immunize them from any future contribution claim regarding operations and maintenance. Under their reading of the district court's order, the Air Products defendants have an interest in the litigation, it is simply not a legally protectable interest. The government, both in its brief and at oral argument, was unwilling to give an opinion on the issue.

On these facts, the right to intervene hinges on whether operations and maintenance is addressed in the Alcan consent decree. But on the record before us we are unable to make this determination. Moreover, we are uncertain whether the district court's decision to deny intervention was based on a belief that the Trustees' interest was not at stake or that the Trustees' interest, while at stake, was not sufficiently

30

protectable to warrant intervention.  Therefore, we will remand the case to the district court for the purpose of determining whether operations and maintenance is an issue addressed in the Alcan consent decree.[0]

If on remand the district court determines operations and maintenance is covered in the Alcan consent decree, we believe the Air Products defendants have a sufficient interest in the Alcan litigation to warrant intervention.[0]  On the other hand, if the district court finds operations and maintenance is not covered in the Alcan consent decree we do not believe the Air Products defendants would have the right to intervene since their interest would not be at issue in the Alcan litigation.  We express no opinion on their right to seek contribution in a later action.

## III.

## Conclusion

For the foregoing reasons, we will vacate the district court orders denying intervention and approving the Alcan consent decree.  We will also remand the case for the district court to

---

[0]The Alcan consent decree does not expressly address operations and maintenance.  Rather, its covenant not to sue makes references to section V of the Air Products consent decree, the section which requires the Air Products defendants to pay operations and maintenance.  On remand the district court may wish to open the record to new evidence.  That decision, however, is within the discretion of the district judge, and we express no opinion on it.

[0]Although we believe the Air Products defendants' interest would be protectable for intervention purposes, we do not rule out the possibility that § 113(f)(2) could extinguish their contribution right if the Alcan consent decree is approved as written.

31

determine whether operation and maintenance, as covered in the Air Products consent decree, is addressed by the Alcan consent decree.